1809.
June.

Bryden
vs
Taylor

BRYDEN vs. TAYLOR.

A special authority must be strictly pursued

Where a person acted in the character of a justice of the peace, although he did not so style himself, yet it is *prima facie* evidence that he had authority to act as such

A permanent residence of a witness is not necessary for the purpose of taking his deposition under the act of July 1779, ch. 8, to perpetuate testimony; but a temporary or transient residence is sufficient. The fact of residence need not be placed on record

What is alleged as a motive or inducement in the deposition made by a witness, may be read in evidence

The minutes of the proceedings of a notary public of a foreign country, are to be considered as records, under the curtesy of nations; and a copy under the hand and notarial seal of a notary is sufficient evidence of the protest of a foreign bill of exchange

Where a person was frequently seen in the counting house of the plaintiff, transacting business as a principal, and was generally supposed, believed, and understood in the town, to be a partner in the house of the plaintiff, *held* not sufficient evidence to prove that such person was a partner of the house of the plaintiff

In *assumpsit* on a foreign bill of exchange the plaintiff is to recover as much money as will, at the time of the verdict, purchase a similar bill

ERROR to the General Court. The defendant in error brought an action of *assumpsit*, upon a foreign *bill of exchange*, drawn on the 23d of July 1799, by C. F. C. Bescke, of Baltimore, on J. A. & D. H. Rucker, of London, in favour of Wm. B. Magruder, for £230 sterling money, and payable 60 days after sight. The bill was endorsed by Magruder to the defendant, (now plaintiff in error,) and by him endorsed to the plaintiff below. It was protested for *nonacceptance* on the 14th of September 1799, and for *nonpayment* on the 16th of November 1799. The general issue was pleaded.

1. *The first bill of exceptions.* The plaintiff at the trial at May term 1805, to prove that he had given to the defendant due notice of the nonacceptance of the bill of exchange, on which the suit was brought, and of the protest for such nonacceptance, offered in evidence a deposition, which, together with the several endorsements thereon, and certificates thereto annexed, was as follows: "*Baltimore*, 3d March 1803. During the absence of *William Taylor*, from *Baltimore*, I received *Francis Brown's* letter directed to him in November 1799, which letter was dated the 13th of September 1799, containing advice of C. F. Bescke's bills, 23d July 1799, for £230 and £120 sterling, on J. A. & D. H. Rucker, London, being protested for nonacceptance, of which I duly notified James Bryden immediately. In the month of February 1800, immediately on receipt of the news that the bills were protested for nonpayment, I returned in the brig John Brickwood, from London, (which appears by Francis Brown's letter of 21st November 1799.) I notified James Bryden thereof by order of William Taylor, and immediately subsequent I heard various conversations between William Taylor and James Bryden on the subject. The second set which W. Taylor wrote for to England, as soon as it was believed the John Brickwood was lost, arrived at Baltimore in September 1800, enclosed in Francis Browne's letter of 28th June 1800, while W. Taylor was out of town, I was then his agent and in town. Immediately on receipt of the bills, I called at James Bryden's, but did not find him; I called again very shortly afterwards and demanded payment for the said bills of the said James Bryden, from whom I could get no satisfaction. In con-

firmation of the loss of the *John Brickwood*, I have examined the journals of the *Marine Insurance* office of this city, and find the following entry under date of the 9th December 1800: "The *Marine Insurance* Office, Dr. to *D Stewart & Sons*. For total loss on brig *John Brickwood*, insured the 10th of January last, on policy No. 504, she having sailed from the *Downs* the 10th December 1799, and no account of her since—it is concluded she has foundered."

*William O. Payne.*

Sworn to before me, by *William Osborn Payne*, on Thursday the 3d of March 1803, at 4 o'clock in the afternoon, at my office in the city of *Baltimore.*

*Owen Dorsey.*

To *James Bryden*. Take notice, that I shall attend at the office of *Owen Dorsey*, Esquire, in the city of *Baltimore*, on the third day of March next, at the hour of four o'clock post meridiem, to take the deposition of *William O. Payne*, to be read in evidence in two suits brought by me against you in the general court for the Western Shore of *Maryland.*

*Wm. Taylor.*

February 8th, 1803,

Between the hours of twelve and one o'clock P. M. on Wednesday the 9th of February 1803, I delivered to *James Bryden*, at his dwelling in Light-street, *Baltimore*, a true copy of the within notice.

*Wm. Y. Lewis.*

Sworn to before me the 3d March 1803.

*Owen Dorsey.*

Received to be recorded, the 19th day of May 1804. Same day recorded and examined.

*Wm. Gibson*, Clk."

The whole was certified under seal of office by the clerk of *Baltimore* county court. The plaintiff also gave in evidence, that *W. O. Payne*, in the deposition mentioned, was dead. The defendant objected to the reading of the deposition in evidence.

CHASE, Ch. J. The court accede to the principle that special authorities must be strictly pursued. But they are of opinion, that it appears upon the face of the deposition that it has been properly taken.

1809

Bryden
vs
Taylor

1809.

Bryden
vs
Taylor;

The court are of opinion, that the act of assembly of July 1779, ch. 8, entitled, *"An act establishing a mode to perpetuate testimony,"* does not require an efficient residence, such as would make a person a domicil, qualify him to vote or to be capable of holding an office; but a temporary or transient residence is sufficient; and it appears to the court, that the requisites of the said act of assembly has been complied with.

The witness being in the county at the time the deposition is taken, is alone necessary; unless it were so, no person but a judge of the general court would be competent to take the testimony of transitory witnesses.

The twenty days notice is not only for the purpose of giving the opposite party time to appear, but to inquire into the character of the witness.

The act of assembly does not require the fact of residence to be put upon record. The defendant excepted.

2. The defendant objected to the reading that part of the deposition which states that the deponent, as clerk of the plaintiff, received letters directed to the plaintiff stating the protest, in consequence of which he gave notice to the defendant as indorser of the bill of exchange.

CHASE, Ch. J. That part of the deposition is only *inducement*—Let it be read.

3. *The second bill of exceptions.* The plaintiff, to prove that the bill of exchange in the declaration mentioned was duly protested for nonacceptance, offered in evidence a paper purporting to be an extract under notarial seal from the books of the notary by whom the said protest was supposed to have been made: "Extract from the protest book marked C, fol. 440, begun the 2d of June 1798, and ended the 8th of November 1799, formerly belonging to *David Guillonneau,* late of *Pope's Head Alley, London,* notary public, deceased, and now in the possession of his successor, *Benjamin Newton,* of the same place, notary public.

*Baltimore,* July 23d, 1799.

Exchange for £230 0 0 sterling.

Sixty days after sight, this my first of exchange, pay to *William B. Magruder,* esq. or order, the sum of two hundred and thirty pounds sterling, value received, which place to account *P. & W.* as advised by

*C. F. C. Bescke.*

To *J. A. & D. H. Rucker*, esq. *London*, endorsed, Pay to Mr. *James Bryden*, or order, value received.

W. P. *Magruder*,
*James Bryden*.

Pay Messrs. *Emmott & Browne*, or *Francis Browne*, or order of either, value with *Wm. Taylor.*

On the fourteenth day of September *Anno Dai.* 1799, at the request of Mr. *Francis Browne*, of *London*, merchant, I *David Guillonneau*, notary public, dwelling in *London*, duly admitted and sworn, went with the original bill of exchange, whereof the aforegoing is a copy, to the house of *J. A.* and *D. H. Rucker*, esqrs. on whom the same is drawn, where having exhibited the said bill to a man servant belonging thereto, I demanded acceptance thereof, whereunto he answered that the said *J. A. & D. H. Rucker*, were not within, and had not left any orders for acceptance of the said bill. Whereupon, I, the said notary, at the request aforesaid, have protested against the drawer of the said bill, and all others concerned, for exchange, re-exchange, and all costs, damages and interest, suffered and to be suffered for want of acceptance of the said bill of exchange. Thus done and protested in *London* aforesaid, in the presence of *John Denton* and *Philip Lamendin*, witnesses. In *testimonium veritatis.*

(Seal.) *Dav. Guillonneau*, Not. Pub.

Faithfully extracted by me, this twenty-eighth day of July, in the year of our Lord one thousand eight hundred and four.

In *Testimonium Veritatis*,
(L. S.) *Benjamin Newton*, Not. Pub."

The defendant objected to the reading of this paper in evidence.

CHASE, Ch. J. The court are of opinion, that the minutes of the proceedings of a notary public are to be considered as records under the curtesy of nations; and that a copy, under the hand and notarial seal of the notary, is sufficient evidence of the protest of a foreign bill of exchange for nonacceptance.

If none but the original would be evidence, what a situation would the party be in where there are different endorsors in different countries? In such cases copies must be sent, and they are always received as evidence. The defendant excepted

1809

Bryden
vs
Taylor

4. *The third bill of exceptions.* The defendant, to prove that the plaintiff at the time of the drawing and endorsing the bill of exchange mentioned in the declaration, was in partnership in trade with a certain *John Taylor,* under the firm of *William Taylor,* and that *John Taylor* was a dormant partner in the said house of *William Taylor,* at the time of such drawing and endorsements, gave evidence that *John Taylor* was at that time in *Baltimore,* where the business of the house of *William Taylor* was carried on, and was frequently seen in the counting house of *William Taylor,* transacting business, receiving applications, and giving answers as a principal in the business, and was generally supposed, believed and understood, in *Baltimore,* to be a partner in the house of *William Taylor.* And it also appeared in evidence, that *John Taylor,* for several years before the drawing and indorsement of the said bill of exchange, resided in *London,* and there carried on business under the firm of *John Taylor & Co.* and that at the times of the drawing and endorsement of the bill, *John Taylor* had recently come from *London* to this state, in bad health, and did not remain in this country longer than 12 or 18 months, when he returned to *London;* and that during a part of his stay in this state, and at the times of the drawing and endorsement of the bill, he resided at a country seat rented by him in the neighbourhood of *Baltimore;* and that *William Taylor* did then, and for a long time before and afterwards, carry on trade and business in *Baltimore* in his own name alone, and not in the name of *William Taylor, & Co.* or in the names of *William* and *John Taylor.* The defendant then prayed the opinion of the court, and their direction to the jury, that if they shall be of opinion from the evidence so offered, that *John Taylor* was at the times aforesaid a partner in the house of *William Taylor,* that the plaintiff is not entitled to recover in this action.

CHASE, Ch. J. The Court are of opinion, that the evidence offered is not sufficient to prove that *John Taylor* was a partner of the house of *William Taylor,* and therefore they refuse to give the direction prayed. The defendant excepted.

5. A question arose as to the value of the sum of money mentioned in the bill of exchange, whether such value

under the act of 1785, ch. 38, should be at the time of the protest or at the time of the notice? It was stated by the attorney general, that the circuit court had decided, that the plaintiff might recover as much money as would purchase a new bill at the time of the verdict.

THE COURT said, that it had been often decided in this court, under the act of 1785, ch. 38, that the plaintiff is to recover as much money as will purchase a similar bill at the time of the verdict.

The verdict and judgment being for the plaintiff, the defendant brought the present writ of error.

The case was argued before POLK, BUCHANAN, NICHOLSON, and EARLE, J.

*Harper* and *Purviance*, for the Plaintiff in error, stated that two grounds of objection were presented by the *first* bill of exceptions—1. That it did not appear that *Payne*, the witness, was a resident of the county where his deposition was taken, so as to give it effect under the act of July 1779, ch. 8; and 2. That it did not appear that *Owen Dorsey*, before whom the deposition was taken, was a person authorised by law to take it.

On the *first point*, they referred to the act of July 1779, ch. 8, s. 1, 2, 7, and the decisions of this court upon the acknowledgments of deeds by *femes covert* grantors. Also *Evans vs. Bower*, 2 *Harr. & M'Hen.* 377. The acts of 1720, ch. 8, s. 5; 1763, ch. 13, s. 2; 1796, ch. 43, s. 14. *Const. Art.* 2, 15; and *Stevenson vs. Myers*, 1 *Harr. & Johns.* 102.

On the *second point*, they cited *Gordon vs. Hickman*, 4 *Harr. & M'Hen.* 217.

On the *second* bill of exceptions, they contended, that the copy of the notarial certificate of the protest of the bill of exchange, ought not to have been received in evidence, until a foundation had been laid for its reception, by proving that the original had been lost, &c. They cited *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 16; and *Gassaway vs. Dorsey*, 4 *Harr. & M'Hen.* 405.

On the *third* bill of exceptions, they contended, that the evidence offered was competent for the jury fairly to infer that there was a partnership.

1809]

Dorsey
vs
Gassaway

*Martin*, for the Defendant in error, on the *first* bill of exceptions, referred, as to the *first point*, to *Sim & Lee's Lessee vs. Deakins*, 2 *Harr. & M'Hen.* 46. ' *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 18. The acts of July 1779, *ch.* 8, and July 1721, *ch.* 14.

On the *second point*, he referred to *Carroll et al. Lessee vs. Norwood*, 4 *Harr. & M'Hen.* 287; and *Ex parte Bollman & Swartwout*, 4 *Cranch*, 75.

On the *second* bill of exceptions, he cited *Walrond vs. Van Moses*, 8 *Mod.* 322, 323.

THE COURT were of opinion, that there was no error in the opinions expressed by the general court in the several bills of exceptions.

JUDGMENT AFFIRMED.

---

JUNE.

The admissions by counsel of certain facts in a special verdict taken at a former trial

DORSEY vs. GASSAWAY.

APPEAL from the General Court: The present was an action of *replevin*, brought by the appellee for two negroes between the same parties in the same action, are not evidence at a new trial of the same cause

If slaves remain in the possession of the vendor, the bill of sale must be recorded; and whether they remained in his possession, is a matter of fact for the jury; if they find they were not in his possession, the bill of sale is not required to be recorded; and it is not evidence, although it was recorded, unless the execution of it is proved.

To lay the foundation for proving an original deed lost, the evidence must be given to the court. *(note)*

Proof being made of the loss of an original deed of mortgage of land and slaves, dated in 1763, the *inspeximus* was admitted to be read as legal evidence, although the deed was not recorded in the manner prescribed by law, so far as respected the slaves in dispute

Where a deed is lost, or not in the power of the party to produce it, it is only necessary to show an examined copy, or prove the contents of the deed

Certain facts refused to be admitted in evidence to prove, that a person who purchased certain slaves, and had made a voluntary gift of them, never paid any consideration for the slaves

Certain acts and declarations of the defendant, subsequent to his sale of the slaves for which an action of replevin was brought, and before his insolvency, are not evidence to defeat the claim of the plaintiff

An affidavit made by a debtor, and payment into the treasury under the tender law, admitted in evidence to prove the person was indebted, and made the payment into the treasury

Proceedings in chancery under an insolvent law, are not evidence in favour of the person who had obtained the benefit of that law, to prove an acknowledgment and admission by him on his application for the benefit of that law

A bill in chancery, with all the proceedings and decree thereon, cannot be read in evidence in an action between different parties from those named in the proceedings

An answer in chancery, made by the respondents from information derived from the present defendant, is not admissible in evidence. But the declarations of the defendant are admissible evidence; and a witness may recur to the answer to refresh his memory as to the declarations made to him by the defendant

No person will be permitted to disaffirm his own sale. He cannot set up his discharge under an insolvent law, to disaffirm his prior acts

If a mortgagee of slaves was subsisting and the mortgagor claiming the absolute ownership of them, sold them for a full consideration, although as to the mortgagee, the sale would transfer only the equitable interest, yet as between the vendor and vendee, the operation of the contract would be to pass the absolute ownership in the slaves to the vendee, and notwithstanding the after discharge of the vendor, under an insolvent law, and his purchase of the slaves from the mortgagee, his subsequent acts, in perfecting his title to the slaves, will enure in law to confirm, and not to defeat, his contract with the vendee

If a debt is due on mortgage and on open account, and partial payments are made by the debtor, without any application, the law will apply the payments to the mortgage debt

Declarations made by the defendant before and after his discharge under an insolvent law, may be given in evidence against him

Payments made by a mortgagor are not to be applied to discharge a debt due on the mortgage, in favour of a purchaser of part of the property mortgaged, who had not paid for it, and who had made a gift thereof to his son, to defraud his creditors

In an action of replevin, the jury may give such damages as they think the plaintiff is justly entitled to, as an equivalent for the injury sustained